UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
DERRICK STORMS,

              Plaintiff,

      -against-

VETERANS OF FOREIGN WARS OF
THE UNITED STATES, INC.,
WILLIAM A. THIEN, ERIC K.
SHINSEKI, MAURA SULLIVAN,
KEVIN SECOR, JOHN E.
HAMILTON, ROBERT WALLACE,
MICHAEL PASCAL, ART KOCK III,
JOHN/JANE DOES 1-100, UNITED
STATES, and VETERANS OF
FOREIGN WARS OF THE UNITED
STATES DEPARTMENT OF NEW
YORK, INC.,

              Defendants.
---------------------------------------------------x



MEMORANDUM & ORDER

15 Civ. 1038 (ENV) (LB)

VITALIANO, D.J.

      Plaintiff Derrick Storms, proceeding *pro se*,[1] brings this action against the Veterans of Foreign Wars of the United States, Inc. ("VFW"), the Veterans of Foreign Wars of the United States Department of New York, Inc. ("VFW New York"), numerous individual defendants, and John/Jane Does 1-100. (Compl., ECF No. 1). As to each defendant, plaintiff asserts claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), as well as tort and breach of contract claims. (*Id.* ¶¶ 75-121).

---

[1] Storms, although proceeding *pro se*, is an attorney who was admitted to the bar of the state of New York in 2011 and to the bar of this Court in 2012. An attorney proceeding *pro se* does not lack for legal training and typically "cannot claim the special consideration which the courts customarily grant to *pro se* parties." *Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 63 (2d Cir. 2012) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n. 4 (2d Cir. 2001)). Plaintiff's legal credentials qualify him to represent others before this Court. He has not requested, and is not entitled to, *pro se* special solicitude simply because he is representing himself.

1

The parties are currently briefing defendants' motions to dismiss. (Order, Oct. 2, 2015, ECF). In the meantime, plaintiff has interposed an objection to the notice filed by the United States pursuant to the Federal Tort Compensation Act of 1988, 28 U.S.C. § 2679, substituting the United States for defendants General Eric K. Shinseki and Kevin Secor, and Maura Sullivan (collectively, the "VA defendants") with respect to plaintiff's tort claims. For the reasons that follow, plaintiff's objection is sustained in part and overruled in part.

## Background

On March 6, 2014, The Daily Caller, a news website, published an article, authored by Storms, that was critical of the United States Department of Veterans Affairs ("VA") and General Shinseki's work as Secretary of the VA. (Compl. ¶¶ 20-21, Ex. 2). Storms was identified in the article as the Legislative Vice Chairman of the VFW. (*Id.* at Ex. 2). Storms alleges that defendant Sullivan, the VA's Assistant Secretary of the Office of Public and Intergovernmental Affairs, and "the VA's public relations officer," was "notified" of his article within three hours of its publication, and she "immediately contacted" General Shinseki about it. (*Id.* ¶¶ 24-25). According to Storms, Sullivan and General Shinseki "discussed measures to alleviate the negative publicity," and agreed to have Secor, the VA's Veterans Service Organizations Liaison Officer, contact the VFW "and request that the VFW write a defamatory article" disputing Storms's allegations. (*Id.* ¶ 26). Storms also claims that General Shinseki, Sullivan, and Secor "encouraged the VFW to punish [Storms] for writing the article." (*Id.*). Storms alleges that Secor contacted the VFW, and, on March 10, 2014, the VFW published an article rebutting plaintiff's criticism and removed him from his position as VWF New York's Vice Legislative Chairman. (*Id.* ¶¶ 30-31, 38).

Regardless of the merit of plaintiff's claims, the Attorney General has certified that the VA defendants "were each acting within the scope of [their] employment as an employee of the United States at the time of the incidents out of which the Plaintiff's claims arose." (Not. at 1, ECF No. 26). The certification effected the substitution of the United States for these defendants with respect to plaintiff's claims for defamation, intentional infliction of emotional distress, and negligent discipline, retention, training and supervision. (*Id.*).

Storms opposes the substitution.[2] He attached several documents to his motion papers, including Sullivan's Declaration, dated September 28, 2015, stating that, at the time of these events in March 2014, she was employed by PepsiCo. (Pl. Reply Mem. Ex. 1 at ¶ 3). Sullivan stated that her employment by the VA began in October 2014. (*Id.* ¶ 2). Neither plaintiff nor the VA defendants have challenged the authenticity and accuracy of Sullivan's Declaration.

## Discussion

"The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common[ ]law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229, 127 S. Ct. 881, 887, 166 L. Ed. 2d 819 (2007) (citing 28 U.S.C. § 2679(b)(1)). If the Attorney General certifies that a defendant employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," then the claims against that defendant "shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). The Westfall Act's protections extend to "an employee on duty at the time and place

---

[2] Pl. Mem., ECF No. 27; Defs. Opp. Mem., ECF No. 34; Pl. Reply Mem., ECF No. 35; Defs. Sur-Reply Letter, ECF No. 36-1; Pl. Sur-Reply Letter, ECF No. 37.

of an 'incident' alleged in a complaint who denies that the incident occurred." *Osborn*, 549 U.S. at 247.

Should the plaintiff oppose the certification, the substitution may be reviewed by the district court. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 436-37, 115 S. Ct. 2227, 2237, 132 L. Ed. 2d 375 (1995). The district court's determination should be made "at the earliest opportunity," to "relieve covered employees from the cost and effort of defending the lawsuit." *Osborn*, 549 U.S. at 252-53.

To merit review, the plaintiff must first allege with particularity facts relevant to determining the scope of the defendant's employment. *See Regnante v. Sec. & Exch. Officials*, No. 14 Civ. 4880 (KPF), 2015 WL 5692174, at *14 (S.D.N.Y. Sept. 28, 2015). "[C]onclusory statements hardly suffice to refute in particularity the scope of employment certification." *Aryai v. Forfeiture Support Assocs.*, 25 F. Supp. 3d 376, 390 (S.D.N.Y. 2012) (quoting *Lettis v. U.S. Postal Serv.*, 39 F. Supp. 2d 181, 209 (E.D.N.Y. 1998)).

If a plaintiff were to satisfy this threshold burden, the district court reviews the certification *de novo*, applying state law principals. "The court must view the tortious conduct in the light most favorable to plaintiff, but it makes its own findings of fact with respect to the scope of the tortfeasor's employment and, in so doing, the court may rely on evidence outside the pleadings." *Freitas v. Cooper*, No. 13 Civ. 4566 (RA), 2014 WL 494525, at *2 (S.D.N.Y. Feb. 5, 2014) (quoting *Bello v. United States,* 93 F. App'x 288, 289-90 (2d Cir. 2004) (summary order)). The objecting "plaintiff ultimately bears the burden of showing that certification was improper." *Regnante*, 2015 WL 5692174, at *14. Thus, "[t]he United States . . . must remain the federal defendant in the action unless and until the District Court determines that the

employee, *in fact,* and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Osborn*, 549 U.S. at 231.

Here, the parties concur that the Court should apply New York law to determine the scope of employment issue. (Pl. Mem. at 2; Defs. Opp. Mem. at 6). Under New York law, "[a]n act is considered to be within the scope of employment if it is performed while the employee is engaged generally in the business of his employer, or if his act may be reasonably said to be necessary or incidental to such employment." *Fenster v. Ellis*, 71 A.D.3d 1079, 1080, 898 N.Y.S.2d 582, 584 (2d Dep't 2010). An act falls outside the scope of employment "if the employee was acting solely for personal motives unrelated to the furtherance of the employer's business at the time of the incident." *Id.* "Among the factors to be weighed are: the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated." *Riviello v. Waldron*, 47 N.Y.2d 297, 303, 391 N.E.2d 1278, 1281 (1979); *see Rosenblatt v. St. John's Episcopal Hosp.*, No. 11 Civ. 1106 (ERK) (CLP), 2012 WL 294518, at *6 (E.D.N.Y. Jan. 31, 2012) (same).

With sights on the black letter of New York law, Storms contends that the VA defendants acted solely for personal reasons and their actions did not benefit the VA, meaning their acts were not within the scope of their employment. (Pl. Mem. 3). According to him, the offending actions were personal in nature because he, Storms, "has no connection with the VA," and because "it is not the business of the VA" to engage in torts such as defamation. (*Id.* at 3-6; *see* Pl. Reply Mem. 3-4).

As to General Shinseki and Secor, plaintiff's contentions fail at the outset because he has not alleged with particularity any facts that call into question the Attorney General's certification. The assessment as to whether Storms has satisfied the requirements of particularity begins with the claim he seeks to state, the crux of which focuses on the response by the VA defendants to an article that was critical of the VA and General Shinseki's work as Secretary. Storms has not alleged that responding to such criticism lies outside the scope of General Shinseki and Secor's employment. Indeed, how could it not be expected that the head of the VA and the VA's liaison to veterans' service organizations would be involved in a response to such criticism from an individual identified as a VFW official?

Relying instead on his own conjecture that these defendants harbored a "personal vendetta" against him, (Pl. Mem. 5), plaintiff ignores the very decisions from which he quotes, which teach that, to be outside the scope of employment, the defendants' conduct must be "taken for wholly personal reasons, which are not job related."[3] "[T]he simple fact that plaintiff has alleged that defendant[ ] ha[s] engaged in *intentional* torts does not compel the conclusion that the employee was acting outside the scope of employment under New York law." *Aryai*, 25 F. Supp. 3d at 390 (quoting *Dowdy v. Hercules,* No. 07 Civ. 2488 (ENV) (LB), 2010 WL 169624, at *5 n. 3 (E.D.N.Y. Jan. 15, 2010)).[4] The employee may still be engaged generally in the

---

[3] Pl. Reply Mem. 5 (quoting *Glacken v. Inc. Vill. of Freeport*, No. 09 Civ. 4832 (DRH) (AKT), 2014 WL 1836143, at *6 (E.D.N.Y. May 8, 2014)); *see id.* (quoting *Galvani v. Nassau Cty. Police Indemnification Review Bd.*, 242 A.D.2d 64, 68, 674 N.Y.S.2d 690 (2d Dep't 1998) (such conduct must be for "wholly personal motives"); *Davis v. City of New York*, 226 A.D.2d 271, 272, 641 N.Y.S.2d 275 (1996) (the conduct must be "wholly personal in nature, the source of which is not job related")).

[4] *See generally Thornton-Burns Owners Corp. v. Navas*, No. 13 Civ. 4241 (PKC) (VMS), 2014 WL 1392026, at *3 (E.D.N.Y. Apr. 9, 2014) (a postal worker's alleged failure to deliver mail was within the scope of her employment); *De Masi v. Schumer*, 608 F. Supp. 2d 516, 522 (S.D.N.Y. 2009) (finding that a senator was acting within the scope of his employment when he allegedly "did not keep promises he made to his constituents and failed to return calls").

employer's business while violating the employer's policies or allowing personal motives to color his job performance. *See, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756, 118 S. Ct. 2257, 2266, 141 L. Ed. 2d 633 (1998) ("[W]hen a salesperson lies to a customer to make a sale, the tortious conduct is within the scope of employment because it benefits the employer by increasing sales, even though it may violate the employer's policies."); *Bello*, 93 F. App'x at 290-91 (a federal employee accused of slander for statements made during a press conference was acting within the scope of his employment "even if [he] committed slander"; although he "may well have formed a negative opinion of [the plaintiff], . . . the fact that such an opinion informed his [response to press inquiries] does not transform that professional task into a personal one"); *Riviello*, 47 N.Y.2d at 302, 391 N.E.2d at 1281 (the relevant question is "whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions"). Thus, even if Storms were able to provide evidence of personal motives, the substitution of the United States would remain proper because, in responding to public criticism of the VA, General Shinseki and Secor were taking actions that were job related and in the VA's interest.[5] Furthermore, in the light of those bedrock principles giving breadth and depth to the parameters of an employee's scope of employment, plaintiff's alternate request for limited discovery to search for evidence of policy violations and animus is misdirected and is denied.

In contrast, the parties do not dispute that, at the time of the events in question, Sullivan was not a federal employee.[6] The plain language of the Westfall Act extends its protections to a

---

[5] General Shinseki and Secor remain parties to this action in relation to plaintiff's *Bivens* claims and breach of contract claim, which will be addressed in the parties' motions to dismiss.

[6] Storms has not suggested his identification of Sullivan was a mistake; he stands by his allegations that she consulted with and counseled General Shinseki in March 2014, notwithstanding her employment status. (*See, e.g.*, Pl. Reply Mem. 3). Regardless the ultimate

7

federal employee "acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). As the government correctly notes, the Supreme Court held in *Osborn* that the United States could be substituted for a federal employee who denied the alleged conduct ever occurred, but that holding was limited to "an employee on duty at the time and place of an 'incident' alleged in a complaint." *Osborn*, 549 U.S. at 247. The government has not advanced any legal authority suggesting the appropriateness of the substitution of the United States for an individual, like Sullivan, who only became an employee at a date after the occurrence of the claimed incident. Clearly, given the submissions of the parties, Sullivan did not become an employee of the VA until approximately seven months after the events at issue. Since Sullivan's Declaration demonstrates that she was not on duty at the time and place of the relevant events, the Attorney General's certification was not proper as to her, and to that extent it is vacated.

## Conclusion

For the foregoing reasons, the substitution of the United States for defendants General Shinseki and Kevin Secor in relation to plaintiff's tort claims was proper, the substitution of the United States for defendant Maura Sullivan in relation to plaintiff's tort claims was improper, and, therefore, plaintiff's objection to the certification by the Attorney General is sustained but only to the extent that substitution of the United States in the stead of Maura Sullivan is vacated, and Maura Sullivan is reinstated as the named defendant for those claims.

Should the parties wish to revise, in light of this decision, the papers served but not yet filed on the motions to dismiss, which may be treated as a motion for summary judgment under

---

disposition of that claim, substitution of the United States for her would be inappropriate with respect to it.

8

Rule 12(d), defendants may do so not later than 14 days after this Order is entered on the docket. Plaintiff shall have 14 days after defendants serve their revised papers, or after the time to do so has expired, in which to serve any revisions to his papers.

So Ordered.

Dated: Brooklyn, New York
January 6, 2016

/s/ USDJ VITALIANO
_____
ERIC N. VITALIANO
United States District Judge