UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------- x
DERRICK STORMS,                                :
                                               :
                        Plaintiff,             :      MEMORANDUM & ORDER
                                               :
        -against-                              :      15 Civ. 1038 (ENV) (ST)
                                               :
VETERANS OF FOREIGN WARS OF THE                :
UNITED STATES, INC., WILLIAM A. THIEN,         :
ERIC K. SHINSEKI, MAURA SULLIVAN, KEVIN        :
SECOR, JOHN E. HAMILTON, ROBERT                :
WALLACE, MICHAEL PASCAL, ART KOCK III,         :
JOHN/JANE DOES 1-100, UNITED STATES, and       :
VETERANS OF FOREIGN WARS OF THE                :
UNITED STATES DEPARTMENT OF NEW                :
YORK, INC.,                                    :
                                               :
                        Defendants.            :
                                               :
---------------------------------------------- :
                                               x

VITALIANO, D.J.

Plaintiff Derrick Storms, an attorney appearing *pro se*,[1] brought this action against the Veterans of Foreign Wars of the United States, Inc. ("the VFW"), the Veterans of Foreign Wars of the United States Department of New York, Inc. ("the VFW-NY"), numerous individual defendants, and John/Jane Does 1-100. Compl., ECF No. 1. As to each defendant, plaintiff asserts claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), as well as state law tort and breach of contract claims. *Id.* ¶¶ 75-121. Three separate motions to dismiss the complaint were filed by: (1) the

---

[1] As in an earlier decision filed in this case, Storms has not requested, and is not entitled to, the special solicitude ordinarily afforded to *pro se* litigants who are not attorneys. Mem. & Order at 1 n.1, ECF No. 44 (citing *Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 63 (2d Cir. 2012)). The familiarity of the parties with that decision is presumed, and its details will not needlessly be repeated here. *See* note 3, *infra*.

1

VWF, William A. Thien, John E. Hamilton, and Robert E. Wallace (collectively, "the VFW defendants"), VFW Not. of Mot., ECF No. 48; (2) the VFW-NY, Michael Pascal, and Arthur Koch III[2] (collectively, "the VFW-NY defendants"), VFW-NY Not. of Mot., ECF No. 51; and (3) the United States, General Eric K. Shinseki, Maura Sullivan, and Kevin Secor (collectively, "the VA defendants"), VA Not. of Mot., ECF No. 54.[3] For the reasons that follow, the defendants' motions are granted in their entirety.

Background

Unless otherwise noted, the following facts are derived from the complaint and are accepted as true for purposes of the present motions only.[4] The saga begins on March 6, 2014, when The Daily Caller, a news website, published an article by Storms that was critical of the United States Department of Veterans Affairs ("VA") and General Shinseki's work as Secretary. Compl. ¶¶ 20-21, Ex. 2. In the article, titled "How veterans can fight back against VA abuse,"

---

[2] Koch contends, and Storms does not dispute, that his name is misspelled in the complaint. VFW-NY Mem. at 1, ECF No. 51-1.

[3] While the parties were briefing these motions, this Court overruled, in part, Storms's objections to the Attorney General's Westfall Act determination. Mem. & Order, ECF No. 44. With respect to Storms's tort claims, the United States was substituted as in the stead of General Shinseki and Secor, but not for Sullivan. The Court construes the VA defendants' submissions to reflect that intervening Memorandum and Order.

[4] Plaintiff supplemented his factual allegations in a declaration attached to his motion papers. See Storms Decl., ECF No. 49. This submission was inappropriate on a motion to dismiss. See generally Goodman v. Port Auth. of N.Y. & N.J., 850 F. Supp. 2d 363, 380 (S.D.N.Y. 2012). In any event, his new allegations are irrelevant to the grounds on which the complaint must be dismissed. In addition, after his request to file sur-replies was denied, see 2/4/2016 Order, ECF, he filed multiple requests for judicial notice of over 15 newspaper articles and other documents, see Pl. Letters, ECF Nos. 63, 64 & 68. These submissions post-date the events at issue by at least a year and have no relevance to the sufficiency of Storms's pleadings. They are plainly offered for their truth, in a misguided attempt to bolster his claims and to circumvent the bar on sur-replies. The requests for judicial notice are denied.

2

Storms sought to advise veterans who believed that they were wrongly denied federal benefits that they "should immediately call an attorney to take legal recourse," and that the "most effective lawsuit a veteran can initiate against VA officials is a Bivens action," which would "allow veterans to personally sue senior VA officials, including Secretary Eric Shinseki." *Id.* Ex. 2. The byline of this article identified Storms as the Legislative Vice Chairman of the VFW, which was not his true position. *Id.* ¶ 6, Ex. 2. Actually, he was the Vice Legislative Chairman of the VFW-NY, an unpaid, volunteer post. *Id.* ¶ 6; *see* Pl. VA Opp. Mem. at 16-17, ECF No. 55-1 (describing his volunteer position).[5]

Storms complains that his article triggered a conspiracy for revenge that stretched from the highest level of the VA to his local VFW post. He alleges that Sullivan, the VA's Assistant Secretary for the Office of Public and Intergovernmental Affairs, "immediately contacted" General Shinseki about the article. Compl. ¶¶ 10, 24-25.[6] Sullivan and General Shinseki allegedly discussed "measures to alleviate the negative publicity" and agreed to have Secor, the

---

[5] The article, which is publicly available online, has since been amended to correct Storms's title. Derrick Storms, *How veterans can fight back against VA abuse*, The Daily Caller (Mar. 6, 2014, 11:04 AM), http://dailycaller.com/2014/03/06/how-veterans-can-fight-back-against-va-abuse/.

[6] The VA defendants respond that these allegations are meritless and must be dismissed because Sullivan was not yet employed by the VA at this time. VA Mem. at 35, ECF No. 54-1. Although it may well be sanctionable conduct to file a complaint without first conducting a reasonable inquiry to confirm that the factual allegations have evidentiary support, Fed. R. Civ. P. 11(b)-(c), specific factual disputes will not be resolved on a motion to dismiss.

VA's Veterans Service Organizations Liaison Officer, request that the VFW "write a defamatory article" and "encourage[]" it to "punish" Storms. *Id.* ¶¶ 11, 26.

Later that day, Secor allegedly contacted Wallace, the VFW's Assistant Adjutant General and Executive Director, to request that the VFW "punish" Storms and begin a "smear campaign." *Id.* ¶¶ 13, 27. However, the pleadings show, as reflected in a March 6, 2014 email, and without any further elaboration, that Secor simply asked Wallace if Storms was "speaking for the VFW." Muckelbauer Aff. Ex. 1, ECF No. 48-2.[7] Wallace responded, "I am not sure I even know this individual," and Secor replied "[I] just wish he didn't use his title." *Id.*

Storms claims that Wallace then contacted Thien, who was, at that time, the VFW's Commander-in-Chief, as well as Hamilton, the VFW's Adjutant General. He alleges that they also agreed to "join the conspiracy" and "punish" him. Compl. ¶¶ 8, 12, 29, 69. Finally, plaintiff asserts that the VFW defendants contacted the VFW-NY and Pascal, who was, at that time, the VFW-NY's Commander-in-Chief, to "demand that [Storms] be terminated" from his volunteer position. *Id.* ¶ 30.

---

[7] After plaintiff attached a portion of Secor's email message to the complaint, the VFW defendants submitted a complete copy, which plaintiff adopted and used in his own motion papers. *Compare* Muckelbauer Aff. Ex. 1, *with* Compl. Ex. 2. The parties do not dispute the email's authenticity or that it should be deemed incorporated into the complaint. VFW Mem. at 4 n.3, ECF No. 48-1.

4

On March 10, 2014, Thien published in The Daily Caller a rebuttal article refuting Storms's criticisms and clarifying that he was not a VFW spokesperson. Compl. ¶ 38, Ex. 6.[8] That same day, Pascal informed Storms and several members of the VFW-NY's leadership, by letter, that Storms had been relieved of his volunteer position. *Id.* ¶ 31, Ex. 3. By separate letter, Storms was informed that he would not be reimbursed for travel expenses to the VFW's Spring Conference. *Id.* ¶ 34, Ex. 5. Also on March 10, 2014, Koch, who was then the VFW-NY's Adjutant, wrote a letter to Storms, which was circulated to the VFW's and the VFW-NY's leadership, criticizing plaintiff's use of a false title that could give the mistaken impression that he was an authorized spokesperson. *Id.* ¶¶ 16, 32, Ex. 4. When Storms called Pascal about these events, Pascal allegedly stated that Storms was terminated at the request of the VA, the VFW, and Thien "as punishment for writing the op-ed article." *Id.* ¶ 36.

Interposing a *Bivens* claim against each defendant, Storms asserts a violation of his rights under the First and Fifth Amendments. *Id.* ¶¶ 75-96. His complaint also asserts claims against each defendant under New York law for defamation, intentional infliction of emotional distress, negligence under several theories, and breach of contract. *Id.* ¶¶ 97-121.

---

[8] Storms attached to his complaint a copy of Thien's article that is covered with his own underlining and highlighting. Compl. Ex. 6. The Court takes judicial notice of the publicly available article, which is integral to the complaint. William A. Thien, *Secretary Shinseki and the VA are doing the best they can*, The Daily Caller (Mar. 10, 2014, 12:43 PM), http://dailycaller.com/2014/03/10/secretary-shinseki-and-the-va-are-doing-the-best-they-can/.

## Legal Standards

Where defendants move under both Rules 12(b)(2) and 12(b)(6), the motion court must first consider that branch of the motion challenging the existence of jurisdiction over the movant. *See, e.g., Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963). On that branch, the burden rests with the plaintiff to establish personal jurisdiction. *See Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013). Where there has been no discovery or evidentiary hearing as to personal jurisdiction, the plaintiff must hurdle only the low bar of a *prima facie* showing, meaning that the "allegations, taken as true, are 'legally sufficient allegations of jurisdiction.'" *Id.* (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010)); *see Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013).

"'To determine personal jurisdiction over a non-domiciliary in a case involving a federal question,'" the district court must (1) "'apply the forum state's long-arm statute'" and (2) "analyze whether personal jurisdiction comports with due process protections established under the Constitution." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). However, the

court need conduct a due process analysis only if long-arm jurisdiction is available under the relevant state statute. *See Penguin Grp. (USA)*, 609 F.3d at 35.

To stave off dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a 12(b)(6) motion, the district court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor." *In re Thelen LLP*, 736 F.3d 213, 218 (2d Cir. 2013). However, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2943, 92 L. Ed. 2d 209 (1986)). Courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## Discussion

I. <u>Personal Jurisdiction</u>

The only defendants advancing a Rule 12(b)(2) attack on the claim of personal jurisdiction over them are the individual VA defendants: General Shinseki, Sullivan, and Secor. In the stead of any allegations of direct action by these defendants in New York, Storms contends they conspired with the VFW-NY defendants to remove him from his volunteer position. *See, e.g.*, Compl. Ex. 3; Pl. VA Opp. Mem. 33-34. He argues that jurisdiction is available under the provision of New York's long-arm statute that applies to a non-domiciliary who, "in person or through an agent[,] . . . commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act." N.Y. C.P.L.R. 302(a)(2); *see* Pl. VA Opp. Mem. at 33. Consequently, the defamation claims asserted by Storms are expressly excluded from any long-arm analysis designed to save them.

The analysis required by this claim will not be written on a clean slate. "To establish jurisdiction on a conspiracy theory, a plaintiff must: (1) establish a prima facie factual showing of a conspiracy; and (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy." *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 232 (E.D.N.Y. 2015). In order to satisfy the second step, the complaint must allege that "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-

conspirators acting in New York acted at the direction or under the control of or at the request of or on behalf of the out-of-state defendant." *In re Terrorist Attacks on Sept. 11, 2001*, 392 F. Supp. 2d 539, 557 (S.D.N.Y. 2005) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005)), *aff'd*, 538 F.3d 71 (2d Cir. 2008); *see Tarsavage v. Citic Trust Co.*, 3 F. Supp. 3d 137, 147 (S.D.N.Y. 2014).

Storms's conspiracy-based theory of jurisdiction fails at the outset because, for the reasons discussed below, he fails to adequately plead any underlying tort motivating the conspiracy. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 633 (S.D.N.Y. 2001) ("[A] claim for civil conspiracy is not an independent tort, but rather, a derivative claim of an underlying substantive tort," and, furthermore, "[l]ogic dictates that parties cannot conspire or agree to commit negligence."); *see also Webster v. Wells Fargo Bank, N.A.*, No. 08 Civ. 10145, 2009 WL 5178654, at *13 (S.D.N.Y. Dec. 23, 2009) (dismissing conspiracy claims "because the underlying substantive tort claims have also been dismissed"), *aff'd sub nom. Webster v. Penzetta*, 458 F. App'x 23 (2d Cir. 2012).

But, even had Storms sufficiently pled the predicate tort, the pleadings do not demonstrate the individual VA defendants' awareness of the effect of their actions in New York. *See Martinez v. Queens Cty. Dist. Attorney*, No. 12-Civ.-06262 (RRM) (RER), 2014 WL 1011054, at *7-8 (E.D.N.Y. Mar. 17, 2014) (finding no personal jurisdiction based on a conspiracy claim where the "plaintiff offer[ed] absolutely no facts suggesting that [the out-of-

state defendant] conspired with anyone in New York"), *aff'd*, 596 F. App'x 10 (2d Cir. 2015).

Storms contends, vaguely and nakedly, that the individual VA defendants (located in Virginia and Washington, D.C.) "requested" or "encouraged" the VFW defendants (located in Missouri, Indiana, and Virginia) to "punish" him, without any allegation that they sought to involve the VFW-NY or take any action in New York, particularly as it is beyond contest that the only specific action they requested was the drafting of a rebuttal article. Compl. ¶¶ 26-27. His allegations that the VFW and VFW-NY defendants discussed taking an action in New York does not equate to a meeting of the minds with the individual VA defendants. Since Storms has not met his burden to make a *prima facie* showing of personal jurisdiction over General Shinseki, Sullivan, and Secor, his claims against these defendants must be dismissed without prejudice.[9]

II. <u>Failure to State a Claim</u>

    A. <u>Federal Claims</u>

Plaintiff's federal claims rely on *Bivens*, 403 U.S. 388, which recognized an implied private cause of action for federal damages against federal officers who violate a citizen's

---

[9] Perhaps anticipating the pleading deficiency, Storms requested "jurisdictional discovery to further develop the facts surrounding the conspiracy." Pl. VA Opp. Mem. at 34. "Declining to permit jurisdictional discovery is well within a district court's discretion" where, as here, the plaintiff fails to make a *prima facie* showing of personal jurisdiction. *In re Angeln GmBH & Co. KG*, 510 F. App'x 90, 93 (2d Cir. 2013); *see Haber v. United States*, 823 F.3d 746, 754 (2d Cir. 2016) (affirming the denial of a "request for jurisdictional discovery . . . based entirely on conclusory and implausible allegations"). The discovery Storms requests, moreover, is plainly not limited to the jurisdictional issue, and would amount to a fishing expedition to support his conspiracy claims more broadly. The request is denied.

constitutional rights. The VFW and VFW-NY defendants, of course, are not federal officers. Straightaway, then, the *Bivens* claims must be dismissed as to the corporate private entities, the VFW and the VFW-NY. The purpose of a *Bivens* claim "is to deter individual federal officers from committing constitutional violations," and there is no right of action against private entities. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 70, 122 S. Ct. 515, 519, 521, 151 L. Ed. 2d 456 (2001).

Concerning the individual VFW and VFW-NY defendants, a *Bivens* claim against a private individual is cognizable only if that individual acted under color of federal law. For guidance on what constitutes "color of federal law," courts consult the more developed body of law controlling lawsuits targeting conduct said to arise under color of state law for purposes of 42 U.S.C. § 1983. *See Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987). As relevant to this case, "the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); [or] (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test')." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (second alteration in original) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296, 121 S. Ct. 924, 930, 148 L. Ed. 2d 807 (2001)). "[C]onclusory allegations of conspiracy" between the federal and

11

private actors will not suffice. *Stoner v. Young Concert Artists, Inc.*, 626 F. App'x 293, 296 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2522 (2016).

Parroting the legal standard, Storms claims that "[t]hrough access and financial incentives," the VA defendants "substantially coerced and encouraged" the individual defendants to punish him. Compl. ¶¶ 80, 91. However, the significant encouragement required for joint activity means encouragement so substantial "that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S. Ct. 2777, 2786, 73 L. Ed. 2d 534 (1982); *see United States v. Stein*, 541 F.3d 130, 147-48 (2d Cir. 2008) (finding significant encouragement by the state where prosecutors "steered [the defendants' company] toward their preferred fee advancement policy and then supervised its application in individual cases."). VA merely requested or encouraged, Storms himself alleges, that the VFW take action, which falls far short of the precedential standard regarding significant encouragement. Since no *Bivens* claim may lie against the institutional defendants and plaintiff does not allege nearly sufficient facts to plausibly plead that the individual defendants acted under color of federal law, the *Bivens* claims are dismissed for these reasons as to all defendants. There is no need to, and the Court does not reach, any of the additional arguments advanced by the parties.

B. <u>State Claims</u>

Finally, Storms interposes claims against the VFW defendants, the VFW-NY defendants, and the United States, under New York law, for defamation, intentional infliction of emotional

12

distress, negligence, and breach of contract. To state a claim for defamation, a plaintiff whose claim is New York law-based must plead that "the defendant published to a third party a defamatory statement of fact that was false, was made with the applicable level of fault, and either was defamatory *per se* or caused the plaintiff special harm, so long as the statement was not protected by privilege." *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011); *see Salvatore v. Kumar*, 45 A.D.3d 560, 563, 845 N.Y.S.2d 384, 388 (2d Dep't 2007).

Only provable statements of fact, not statements of opinion, can constitute actionable defamation. *See Brahms v. Carver*, 33 F. Supp. 3d 192, 198 (E.D.N.Y. 2014). Whether a statement is one of fact or opinion is a question of law. *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000). In differentiating opinion from fact, courts undertake "1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; 2) a determination of whether the statement is capable of being objectively characterized as true or false; 3) an examination of the full context of the communication in which the statement appears; and 4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." *Id.* at 178-79 (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 292, 501 N.E.2d 550, 554, 508 N.Y.S.2d 901, 905 (1986)).

Among other deficiencies, Storms's defamation causes of action warrant dismissal because the offending statements are plainly opinion. He primarily complains that the following statements, by Thien in his rebuttal article, were defamatory: that Storms's "op-ed reflects a lack of in-depth knowledge of the VA claims process," that "his allegations of a 'widespread culture' at VA where officials and employees are rewarded for 'violating veterans' constitutional rights' are specious at best," and that it was "especially troubling that he would advise veterans who may already be facing financial hardship to pursue costly and frivolous legal action without first consulting with one of our many expert VFW Service Officers for assistance in resolving their claim." Compl. ¶ 40; Thien, *supra* note 8.[10] Manifestly, these statements are not readily categorized as true or false. Placed in the context and setting of Thien's article—a rebuttal to Storms's opinion piece that was titled "Secretary Shinseki and the VA are doing the best they can," and published online under the large and bold font headline "OPINION"—the only reasonable conclusion is that the rebutting statements are also opinion.[11]

---

[10] To the extent Storms also complains that the rebuttal article included factually incorrect statements about VA, such statements did not defame Storms. *See* Pl. VFW Opp. Mem. at 19, ECF No. 49-1.

[11] Furthermore, plaintiff's generalized and conclusory allegations that the statements injured him in his profession are not sufficient to establish *per se* damages, and he did not allege any special damages, as would be required under New York law. *See Thompson v. Bosswick*, 855 F. Supp. 2d 67, 76-77 (S.D.N.Y. 2012); *Liberman v. Gelstein*, 80 N.Y.2d 429, 436, 605 N.E.2d 344, 348, 590 N.Y.S.2d 857, 861 (1992); *see generally* Celle, 209 F.3d at 179-80. Additionally, the United States is immune from suit for defamation. *See Catania v. Herbst*, 916 F. Supp. 2d 266, 272-73 (E.D.N.Y. 2013).

The three March 10, 2014 letters aggrieve Storms but his complaints about them fare no better. Two of those letters are extremely brief and, more importantly, contain only undisputed facts about Storms's termination. Compl. ¶¶ 31, 34, Exs. 3, 5. The third letter, stating that the article he wrote was "an embarrassment" to the VFW and "left one with the impression that [Storms was] the spokesperson and [was] providing the position of [the VFW]," due to the use of a false title, is opinion without a quibble, namely, Koch's beliefs about the effects of the article and the likely impressions its readers would be given. None presents actually defamatory statements.

Shifting gears, to state a claim for intentional infliction of emotional distress, New York law demands, *inter alia*, a showing of "extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Friedman v. Self Help Cmty. Servs., Inc.*, 647 F. App'x 44, 47 (2d Cir. 2016) (quoting *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014)). The allegations here do not come close to reaching this high bar. In any event, a claim for intentional infliction of emotional distress will not lie where relief may be obtained through traditional tort liability, such as a claim for defamation targeting the allegedly distressing words. *See Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015); *Brancaleone v. Mesagna*, 290 A.D.2d 467, 468, 736 N.Y.S.2d 685, 687 (2d

Dep't 2002) (finding "that the cause of action for intentional infliction of emotional distress should have been dismissed as duplicative of the cause of action for defamation").[12]

Adding to the theories and causes in his litigation basket, Storms claims that each of the defendants, corporate and individual, is liable for failing to fire, discipline, train, or supervise Thien, Hamilton, Wallace, Pascal, and Koch, and for failing to prevent what he perceives as their conduct. Compl. ¶¶ 108, 112, 116. Of course, the individual defendants and the corporate defendants who did not actually employ the named individual defendants cannot be held liable on that basis. Nor can the corporate and individual defendants be held responsible for each other in such a claim, sounding in negligence, as "[l]ogic dictates that parties cannot conspire or agree to commit negligence." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 633 (S.D.N.Y. 2001). In any event, plaintiff has not identified any duty of care owed to him, as is required to state a claim for negligence under New York law. *See Sullivan v. City of New York*, No. 14-CV-1334 (JMF), 2015 WL 5025296, at *10 (S.D.N.Y. Aug. 25, 2015) (dismissing a negligence cause of action where the plaintiff did not "cite any authority even suggesting that he was owed a duty by [the defendant]"). Singularly dispositive here, moreover, New York law does not recognize claims for negligence based on intentional acts, such as the

---

[12] Over and above other deficiencies, Storms failed to exhaust his administrative remedies concerning his intentional infliction of emotional distress and negligence claims against the United States, as required by the Federal Tort Claims Act, 28 U.S.C. § 2401(b). *See Foster v. Fed. Emergency Mgmt. Agency*, 128 F. Supp. 3d 717, 727-28 (E.D.N.Y. 2015).

16

organizational ouster of Storms. *See United Nat'l Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993); *Greenaway v. County of Nassau*, 97 F. Supp. 3d 225, 239 (E.D.N.Y. 2015).

Were those deficiencies not enough to warrant dismissal, employment-related negligence claims require, "that the employer 'knew or should have known of the employee's propensity for the conduct which [allegedly] caused the injury' prior to the injury's occurrence." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (quoting *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 161, 654 N.Y.S.2d 791, 793 (2d Dep't 1997)). Storms alleges no such prior knowledge, much less facts plausibly alleging it. Additionally, no claim of this sort will lie where, as here, the employee acted within the scope of his employment. *See Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 263 (E.D.N.Y. 2014), *aff'd*, 626 F. App'x 297 (2d Cir. 2015); *see* Mem. & Order at 6, ECF No. 44 (finding that the VA defendants acted within the scope of their employment in responding to criticism "from an individual identified as a VFW official").

As for breach of contract, Storms, an unpaid volunteer, has not alleged the offer, acceptance, and consideration required for the formation of a contract. *See Fisher v. Int'l Student Exch., Inc.*, 38 F. Supp. 3d 276, 282 (E.D.N.Y. 2014) (concluding that a study abroad organization's handbook did not constitute a contract with a volunteer host who "received no

17

compensation for his agreement to house [the plaintiff]").[13] In any case, plaintiff rests his breach of contract claim, in part, on a "section 5" of the VFW's By-Laws that, as a review of the By-Laws shows, does not exist, and, in part, on "sections 901-903," which specify that the disciplinary procedures they describe do not supersede the authority bestowed on the department commander (in this case, Pascal) by the VFW Manual of Procedure to "remove officers, committee chairmen and committees appointed by him at any time." Muckelbauer Aff. Ex. 3; *see id.* at Ex. 2; *see generally* VFW Mem. 19-20, ECF No. 48-1; VFW-NY Mem. at 24 n.7. For these reasons, Storms has not properly pleaded any of his state law claims and his complaint must be dismissed in its entirety. Additionally, he did not move for leave to amend, nor, dispositively, is there any indication in the record that any colorable claim exists such that leave to amend might be warranted.

## Conclusion

For the foregoing reasons, the defendants' motions to dismiss are granted in their entirety. Plaintiff's causes of action against General Shinseki, Sullivan, and Secor are dismissed without prejudice for lack of personal jurisdiction. His claims against the VFW, Thien,

---

[13] Certainly, bylaws may, in certain circumstances, be determinative, but that does not excuse Storms's failure to allege facts showing the existence of a contract. Pl. VFW-NY Opp. Mem. at 22 (citing *Pomerance v. McGrath*, 124 A.D.3d 481, 482, 2 N.Y.S.3d 436, 439 (1st Dep't 2015) (finding the violation of a condominium's bylaws to be "akin to a breach of contract")).

Hamilton, Wallace, the VFW-NY, Pascal, Koch, and the United States are dismissed with prejudice for failure to state a claim on which relief may be granted.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
        October 28, 2016

                                      s/Eric N. Vitaliano
                                      ERIC N. VITALIANO
                                      United States District Judge